IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DARLENE DENISE DODD,                    §
    PLAINTIFF,                        §
                   §
VS.                                     §   CIVIL ACTION NO. 4:13-CV-0361-Y
                   §
CAROLYN W. COLVIN,                      §
ACTING COMMISSIONER OF SOCIAL           §
SECURITY,                               §
    DEFENDANT.                        §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

*Pro-se* plaintiff Darlene Denise Dodd ("Dodd") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In January 2012, Dodd protectively applied for DIB, claiming that she had been unable to work

1

since January 1, 2012.[1]  (Transcript ("Tr.") 14; *see* Tr. 37-38, 121-22.)  Her applications were denied initially and on reconsideration.  (Tr. 14, 57-66.)  An ALJ held a hearing on December 17, 2012 and issued a decision on January 25, 2013 that Dodd was not disabled.  (Tr. 11-54.) Dodd filed a written request for review of the ALJ's decision, and the Appeals Council denied the request on April 3, 2013, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-5.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 404.  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or

---

[1] The ALJ, in his decision stated that Dodd protectively filed her application on June 21, 2011.  (Tr. 14.) However, at the hearing before the ALJ, Dodd testified that she filed the application in January 2012.  (Tr. 36.) Furthermore, at the hearing, Dodd, through her representative, opted to amend her alleged onset date of disability to January 1, 2012, because she last engaged in substantial gainful activity in December 2011.  (Tr. 14, 37-38.)

equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. § 404.1520(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.   *Id.* § 404.1520(e).   And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.   *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).   At steps one through four, the burden of proof rests upon the claimant to show he is disabled.   *Crowley,* 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.   *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.   *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.   *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance.   *Id.*   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.   *Id.*   This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.   *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

Dodd presents the following two issues in her brief:

(1) "Did the Administrative Law Judge abuse her discretion with the medical evidence submitted denying that Plaintiff's episodic asthma attacks caused by severe allergic asthma is not disabling under ADA Amendment Acts of 2008 and the definition of disability 42 USC § 12102[;]" and

(2) "Did the Administrative Law Judge abuse her discretion regarding the Plaintiff's ability to perform past relevant work in an environment or environments that will not accommodate her severe allergic asthma?"

(Plaintiff's Brief ("Pl.'s Br.") at 5.[2])

### IV.   ALJ DECISION

In his January 25, 2013 decision, the ALJ found that Dodd had not engaged in any substantial gainful activity since January 1, 2012, the amended alleged onset date. (Tr. 16.) The ALJ further found that Dodd suffered from the following severe impairments: "asthma, nasal allergies, hypertension, and carpal tunnel syndrome with right arm (dominant) tendonitis." (Tr. 16.) Next, the ALJ held that none of Dodd's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. at 17.) As to Dodd's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and push and pull in the weights given with frequent stooping, crouching, kneeling, reaching, handling, feeling and fingering. She can perform occasional climbing of stairs and ramps but no climbing of ropes,

---

[2] The Court notes that Dodd did not consistently number every page in her brief. Thus, the Court refers to page 1 as the cover page to Dodd's brief and consecutively thereafter. Any references to the page numbers in Dodd's brief herein refer to page numbers as reflected in the electronic file stamp at the top of each page of the document on file, *i.e.*, Statement of the Issues on "Page 5 of 27" in Doc. 16.

ladders, or scaffolds, and no balancing.  In addition, the claimant must avoid even moderate exposure to airborne irritants such as dust, fumes, gases, poor ventilation, and concentrated heat and humidity.  She can speak frequently.  (up to 2/3 of the work day).

(Tr. 17 (emphasis omitted).)  Next, the ALJ found that Dodd was able to perform her past relevant work as a system analyst, reservation clerk, paralegal, and personnel recruiter, and, thus, was not disabled.  (Tr. 20-21.)

## V.    DISCUSSION

### A.    ALJ's Alleged Failure to Find Asthma Attacks Disabling

In her brief, Dodd claims that her episodic asthma attacks limit her ability to breath and work and would be considered disabling under the "ADA Amendments Act of 2008 and the definition of disability 42 USC § 12102."  (Pl.'s Br. at 23.)  Dodd claims that the treatment notes and opinions from Drs. Brancaccio and Muncy indicate that she is disabled pursuant to 42 U.S.C. § 12102.  (Pl.'s Br. at 23-24.)  Dodd further states:

> The Administrative Law Judge appears to have abused her discretion and ignored the medical evidence concurred by Plaintiff's internal medicine doctor, pulmonologist and other treating sources.  The medical evidence and opinions clearly stated the Plaintiff was unable to work due to her episodic asthma attacks caused by severe allergic asthma, dyspnea, longstanding asthma poor control, poor residual lung capacity and her asthma is life threatening at times.

(Pl.'s Br. at 24.)  In support of her arguments, Dodd included the following evidence with her brief: (1) a partial copy of a list of exhibits attached to the ALJ's decision (Pl.'s Br. at 10-12; *see* Tr. 24-26); (2) a letter dated December 10, 2012 from Dr. Brancaccio (Pl.'s Br. at 13-15; *see* Tr. 685-87); (3) a letter dated August 29, 2012 from Dr. Muncy (Pl.'s Br. at 16; *see* Tr. 680); (4) Xolair Referral Form dated January 12, 2013 (Pl.'s Br. at 17); (5) a medical bill dated July 2,

5

2013 showing various charges for Xolair treatments (Pl.'s Br. at 18); (6) copies of a Xolair pamphlet (Pl.'s Br. at 19-20); and (7) a copy of a letter dated June 18, 2013 from AAA Life Insurance Company stating that Dodd was denied life insurance due to the following: (a) a pulmonary function test dated January 25, 2012 showing "moderate to severe restriction, and longstanding asthma poor control, with multiple medications being used;" (b) records from Dr. Muncy dated February 13, 2013 showing Dodd continues to be disabled due to poor residual lung capacity; and (c) records dated August 29, 2012 showing that Dodd's asthma is life threatening at times (Pl.'s Br. at 22).

As stated above, the ALJ found that Dodd had the RFC to perform light work,[3] except that she could only occasionally climb stairs and ramps but could not balance or climb ropes, ladders, or scaffolds. (Tr. 17.) In addition, the ALJ stated that Dodd must avoid even moderate exposure to airborne irritants such as dust, fumes, gases, poor ventilation, and concentrated heat and humidity. (Tr. 17.) As to Dodd's asthma and the findings from Drs. Brancaccio and Muncy, the ALJ stated:

> During the period relevant to her claim, the claimant has received treatment for asthma, allergies, hypertension, and right arm pain secondary to calcific tendinitis, among other things. The claimant's primary complaint, however, is asthma. According to the record, the claimant was diagnosed with

---

[3] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

asthma as a child and has been on medication since her diagnosis.  Currently, the claimant is on Advair, Singulair, and Xopenex (inhaler).   She also began receiving monthly Xolair infusions in April 2012 and according to progress notes from pulmonary specialist Frank A. Brancaccio, M.D., one of the claimant's treating physicians, did well.  In fact, he indicated in notes from August 2012 that the claimant believed that Xolair had been helpful and she was better overall, with her wheezing decreased and her shortness of breath showing improvement despite using her inhaler up to four times per week.   Conversely, when the claimant missed Xolair injections in October and November 2012, due to a period where her hypertension was uncontrolled with her experiencing headaches and blurred vision, the claimant had four asthma attacks.  However, when treatment resumed in December 2012, she experienced no attacks or other issues.  In addition, Dr. Brancaccio's notes reflect side effects from the Xolair injections such as temporary headache, fatigue, and drowsiness.   Importantly, absent from Dr. Brancaccio's notes and other treating notes indicating that the claimant tolerated the injections well, is any assertion that it took the claimant five days to recover following each injection as she said at the hearing.  In fact, the claimant made no such assertion at the hearing.   Because the minimal complaints that are substantiated by the record are grossly at odds with the claimant's assertion of a five-day recovery period, the undersigned is not convinced that undergoing Xolair injections has such an extreme affect on the claimant.   In any event, the undersigned has addressed any impact that this complaint and others might have on her ability to perform work-related activities in the above residual functional capacity.   Consideration has been given to her respiratory issues in giving environmental limitations and in limiting speaking to no more than two-thirds of the work day.

Moreover, consistent with the claimant's minimal complaint while on Xolair, chest x-rays and a CT scan had generally normal findings. . . .

Additionally, when the claimant was evaluated for complaints of asthma, lung disease, dyspnea, and hypertension in April 2012, those results were also generally normal although she complained of shortness of breath on range of motion testing . . . .

Despite the claimant's generally unremarkable treatment history, Paul Alan Muncy, M.D. who has apparently treated the claimant for asthma for several years submitted three letters opining that the claimant was permanently disabled secondary to asthma and dyspnea.   All of the letters essentially make this assertion without citing any clinical findings in support of the assertion.   A blanket statement that the claimant is disabled with little more is insufficient to demonstrate that the claimant has limitations that prevent her from performing

7

work activities.  Similarly, a statement listing work related limitations and things that trigger the claimant's asthma without pointing to specific medical findings suggestive of such limitations or stating why the mere existence of such triggers prevents the claimant from working, fails to demonstrate that the claimant is disabled.  Furthermore, even if the undersigned were to find that Dr. Muncy's opinion was based on the evidence of record, the requisite specific support for such an opinion would still be lacking on functional limitations because the evidence only shows that the claimant was treated for asthma, hypertension, and arm pain with minimal complaints and no more than conservative treatment.  As such, Dr. Muncy's opinions are grossly at odds with the other evidence of record, which renders them wholly unpersuasive.  In addition, even Dr. Muncy's own treating notes indicate that the claimant was followed for asthma by Dr. Brancaccio whose treating notes fail to reflect asthma related complications of a disabling degree.  Moreover, Dr. Brancaccio has not opined that the claimant is disabled due to asthma.

Consequently, the undersigned has accorded little weight to Dr. Muncy's opinions (basically that the conditions mentioned exist and do cause some limits) and accords the most weight to the April 2012 conclusion that the claimant could perform light work with some postural limitations, which was rendered by state agency consultants.  In doing so, the undersigned has thoroughly considered the evidence of record, and found that pulmonary irritants and extreme heat/humidity could potentially aggravate the claimant's asthma and has accordingly assigned limitations consistent with that finding in the residual functional capacity above.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence discussed above and demonstrates that while the claimant has conditions limiting her functioning, she is still capable of performing many tasks.  The limitations set forth in the residual functional capacity account for each demonstrated restriction.

(Tr. 18-20 (internal citations omitted).)

RFC is what an individual can still do despite her limitations.[4]  Social Security Ruling

("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only

---

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

9

to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

A review of the ALJ's opinion in this case reveals that the ALJ gave thorough consideration to the evidence in its entirety, including the opinions of Drs. Brancaccio and Muncy and Dodd's allegations of pain and the symptoms associated with her asthma. In addition, the ALJ placed significant limitations on Dodd to account for her asthma. Based on the facts in this case, it is clear that the ALJ discussed (1) the evidence in the record in making his RFC determination, (2) adequately explained the reasoning for such determination and for giving less weight to certain evidence, and (3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

Moreover, as to Dodd's argument that the ALJ failed to find her "disabl[ed] under ADA Amendments Act of 2008 and the definition of disability 42 USC § 12012," the Court notes that Dodd filed for disability under Title II of the SSA, 42 U.S.C. § 423(d)(1)(A). *See* 42 U.S.C. § 405(g). The ALJ is not bound by the Americans with Disability Act in ruling on a social security disability case. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801-03 (1999) (explaining one of several fundamental distinctions between the Social Security Act and the

Americans with Disabilities Act); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999) ("[T]he ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other.") Instead, the SSA defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). The ALJ properly made his determination under the terms of the SSA and such determination is supported by substantial evidence.

As to the documents Dodd submitted to the Court with her brief, most of the documents have already been considered by the ALJ as they are part of the transcript of the record. The four documents that do not appear to have been considered by the ALJ are (1) the Xolair Referral Form dated January 12, 2013; (2) a medical bill dated July 2, 2013 showing various charges for Xolair treatments; (3) copies of a Xolair pamphlet; and (4) the June 18, 2013 letter from AAA Life Insurance Company showing that Dodd's application for life insurance was denied. (Pl.'s Br. at 17-20, 22.) The Court notes that "[w]hen new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42. U.S.C. § 405(g) and *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of the newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To

11

justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, the evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

In this case, at the very least, there is no evidence that these four documents are material. This evidence merely shows that Dodd was taking and being charged for Xolair treatments, a fact that the ALJ was aware of and considered in making his decision. (Tr. 18-19.) As to the letter denying Dodd life insurance, such denial is not dispositive of whether Dodd is disabled as defined by the SSA. *See, e.g.*, *Ned v. Hartford*, No. 06-0686, 2007 WL 594902, at *9 (W.D. La. Feb. 16, 2007 ("[A] social security determination based on federal criteria is not dispositive of whether an individual is disabled under the specific terms and conditions of a group long term disability plan.") In other words, such documents do not provide a reasonable probability that they would change the outcome of the Commissioner's decision. Consequently, remand is not required.

### B.  Past Relevant Work Issues

In her brief, Dodd also argues that the ALJ abused his discretion in finding that Dodd could perform her past relevant work in an environment or environments that will not accommodate her severe allergic asthma. (Pl.'s Br. at 25-26.) Specifically, Dodd states:

12

>Dr. Muncy's letter of disability dated August 29, 2012 plainly stated, "Her asthma attacks are triggered by stress, temperature changes, humidity changes, pollution, and a number of environmental allergens."  Many of the Plaintiff's former employers could not or would not accommodate her environment to prevent an episodic asthma attack.  In addition, stress and environmental allergens were large factors triggering the attacks.  The Plaintiff's past relevant work was demanding and stressful.  Whether the Plaintiff worked at home or in the office, the environmental allergens of dust, pollen, fumes, pollution and fragrances caused episodic asthma attacks.  The Plaintiff's illness, when active, substantially limited her ability to work.  Thus, the Plaintiff has to take unpaid medical leaves of absence.

(Pl.'s Br. at 25.)

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis.  When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE.  *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.") "'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d, 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). At Step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

In this case, the VE testified, *inter alia*, that Dodd could perform her past relevant work as a system analyst, reservation clerk, paralegal, and personnel recruiter with an RFC as set forth above.  (Tr. 47-49.)  Based on the VE's testimony, the ALJ found at Step Four that Dodd could perform her past relevant work on the VE's testimony.  (Tr. 20-21.)  As to Dodd's claim that, based on Dr. Muncy's August 29, 2012 letter, Dodd cannot perform her past relevant work as it is demanding and stressful and due to the statement that "the environmental allergens of dust, pollen, fumes, pollution and fragrances cause episodic asthma attacks," the Court notes that the ALJ specifically did not accept Dr. Muncy's opinions that Dodd was permanently disabled secondary to asthma and dyspnea.  (Tr. 20.)  The ALJ, as set forth previously herein, specifically noted that he was aware of Dodd's "respiratory issues" (Tr. 19) and included limitations in the RFC to accommodate such issues.  Because the ALJ's RFC determination was supported by substantial evidence and the ALJ relied on the VE's testimony at Step Four in finding that Dodd could perform her past relevant work, the ALJ did not commit error.  Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the

party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 9, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 25, 2014.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

15